# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CEDRIC HAYES,**
        Petitioner,

v.        Case No. 18-C-0287

**JENNIFER MCDERMOTT,**
        Respondent.

## DECISION AND ORDER

Cedric Hayes petitions for a writ of habeas corpus under 28 U.S.C. § 2254. In this order, I address the merits of his claims.

## I. BACKGROUND

Following a jury trial, Hayes was convicted of one count of repeated sexual assault of a child. He was sentenced to 13 years' initial confinement and 8 years' extended supervision. The Wisconsin Court of Appeals summarized the facts of the case as follows:

> According to the criminal complaint, Q.L.W., a thirteen-year-old girl, ran away from home and stayed with Hayes, then thirty-seven years old, during the periods of April 20, 2012, through April 30, 2012, and June 3, 2012, through June 18, 2012. The State alleged that during each of those periods, Hayes engaged Q.L.W. in an act of sexual intercourse, and the State charged Hayes with two counts of second-degree sexual assault of a child in violation of Wis. Stat. § 948.02(2) (2011-12). Hayes disputed the charges and demanded a jury trial.
>
> Six days before trial began, the State filed an amended information alleging a single count of repeated sexual assault of the same child between April 20, 2012, and June 18, 2012. See Wis. Stat. § 948.025(1)(e). Hayes, by counsel, said he did not object.
>
> . . . .

[At trial,] Q.L.W.'s mother, A.Q., described the time periods during which Q.L.W. was a runaway. Specifically, A.Q. said that Q.L.W. ran away from home in March 2012, returned for a brief visit, then ran away again. Police brought Q.L.W. home in June 2012.

When Q.L.W. took the stand, she also provided a partial timeline of events. She testified she could not recall the date she first ran away from home, but that it was some time in April 2012. She said she stayed with various people over a period of two-to-three weeks before someone brought her to Hayes's house. She thought she lived with Hayes for about a two-month period interrupted only by a visit with her mother on Mother's Day. In early June, she returned to her mother's home, then ran away again and stayed with Hayes from approximately June 4, 2012, until June 18, 2012, when police found her at his house.

Q.L.W. testified that on the day she met Hayes, his house was cold and had no heat or electricity. Hayes suggested she get into bed with him to keep warm. She complied, and they had sexual intercourse twice during that night. Q.L.W. went on to testify that between the time she first arrived at Hayes's house and Mother's Day, Hayes had sex with her "every day. Sometimes twice a day." When she returned to him after Mother's Day, they had sexual intercourse approximately "every other day." She described an incident in June 2012 when she had sexual intercourse with Hayes three times, explaining that one of the acts terminated because Hayes's houseguest, Kayla Sienko, approached the bedroom.

Detective Tammy Tramel-McClain testified that she was a detective with the sensitive crimes division of the Milwaukee Police Department. She described her experience interviewing young victims of sexual assault and her observations about the characteristics of adolescent victims. She said she interviewed Q.L.W. on June 18, 2012, after Q.L.W. disclosed a sexual relationship with Hayes. Tramel-McClain went on to describe the tenor of the interview and her impressions that Q.L.W. was reluctant to talk and did not seem forthcoming.

Hayes elected to testify on his own behalf. He said he did not remember the precise date that he met Q.L.W., but it was "right after [he] moved in[to his] house." He recalled that he moved into the house in April 2012, and a few days later his utilities were temporarily disconnected. During direct examination, he testified about the utility problems:

Q: Have there been power outages in your house?

[HAYES]: Yes, the month I moved in and when I moved in I hesitated switch over to the utilities [sic], so probably 10 days to two weeks after I moved in, Wisconsin Electric turned it off[ ], and I had to go down there and put it in my name.

2

> Q: So that happened?
>
> [HAYES]: Yeah.
>
> Q: Okay. All right. So, Mr. Hayes, back in April of 2012, that's when you moved into the house?
>
> [HAYES]: Yeah.
>
> ....
>
> Q: Mr. Hayes, back to April of 2012. The young woman that testified earlier today, [Q.L.W.], when did you first meet that young lady?
>
> [HAYES]: It would be probably I would say like the end of April, like right after I moved in that house.
>
> Q: You don't remember the exact date, do you?
>
> [HAYES]: No, it was right about that time I had to switch the utility over.
>
> Hayes went on to say that he gave Q.L.W. a place to stay. He acknowledged that the first night she slept at his house "was when the electricity was out so she was sleeping in the basement with no lights or electricity." He admitted that from that night forward, Q.L.W. was at his house "probably every day," although he claimed she slept there only three or four times. He categorically denied that he ever had sexual contact with Q.L.W. and suggested her accusations against him arose from her fantasies and desires.
>
> In rebuttal, the State called Sienko. She testified that after she and Hayes ended their romantic relationship, she occasionally stayed at his house. She said this occurred during a time when Q.L.W. was sleeping in Hayes's bedroom. Sienko then described an incident in June 2012 when she "came up from the basement one day, and [Q.L.W.] was giving [Hayes] oral sex."

*State v. Hayes*, No. 2012CF3450, 2016 WL 7108388, at *1–2 (Wis. Ct. App. Dec. 6, 2016) (footnotes omitted).

After the jury found Hayes guilty, he moved for postconviction relief and alleged that his trial counsel was ineffective in five respects. First, he argued that trial counsel was ineffective for failing to investigate the status of his utility service during the

3

charging period. In his postconviction motion, he produced documentation from a utility company showing that he had heat and electricity in his house from April 1, 2012, until more than a year later. Therefore, he argued, if trial counsel had undertaken an investigation, trial counsel would have discovered that the utilities in his house were functioning throughout the charging period of April 20, 2012, through June 18, 2012. Hayes argued that the failure to investigate this issue was prejudicial because the utility records showed that the assaults never occurred and that, if they did, they occurred outside the charging period.

Second, Hayes argued that his trial counsel was ineffective for failing to object when, prior to trial, the state moved to amend the information to allege a single count of repeated sexual assault of the same child instead of two counts of second-degree sexual assault of a child. Third, Hayes argued that his trial counsel was ineffective in failing to object to Detective Tramel-McClain's testimony on the grounds that it was improper expert testimony and improper vouching for Q.L.W. Fourth, Hayes argued that his trial counsel was ineffective in failing to object when the state called Sienko in rebuttal to testify about the instance of oral sex she witnessed. Finally, Hayes argued that his counsel was ineffective in failing to investigate various alleged lies told by Q.L.W.to the police prior to trial.

The trial court rejected each of these postconviction claims without holding an evidentiary hearing. The Wisconsin Court of Appeals affirmed. Hayes sought review in the Wisconsin Supreme Court, which was denied.

Next, Hayes filed his federal habeas petition. The petition asserts ten grounds for relief: the five claims of ineffective assistance of trial counsel that Hayes raised on direct

review, plus five new claims. Because the new claims were unexhausted, the petition was "mixed" and subject to dismissal on that ground. *See Rose v. Lundy*, 455 U.S. 509 (1982). Hayes recognized this problem and filed a motion for stay and abeyance under *Rhines v. Weber*, 544 U.S. 269 (2005), along with his petition. I granted the motion, and Hayes returned to the state courts to exhaust his remaining claims. When Hayes returned to federal court, the respondent moved to dismiss the five previously unexhausted claims on the grounds that: (1) the state court had rejected four of them based on an independent and adequate state ground, and (2) the remaining claim (which sought a new trial in the interests of justice) was not cognizable on federal habeas review. In an order dated December 18, 2020, I granted the motion to dismiss. (ECF No. 19.)

After the respondent filed her answer to the remaining claims in the petition—the five ineffective-assistance claims that Hayes had raised on direct review—I asked the parties to file briefs on the merits of those claims, which they have done. I consider those claims below.

## II. DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to a habeas petition filed by a person in custody pursuant to a judgment of a state court. *See* 28 U.S.C. § 2254. It contains a deferential standard of review that prevents a federal court from granting the writ with respect to any claim that was adjudicated on the merits in state court unless the petitioner shows that the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United

5

States or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Id.* § 2254(d). The Wisconsin Court of Appeals adjudicated Hayes's claims of ineffective assistance of trial counsel on the merits, and therefore AEDPA's deferential standard of review applies.

To establish a Sixth Amendment claim of ineffective assistance of counsel, Hayes must show that his counsel performed deficiently and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). To establish deficient performance, Hayes must demonstrate that counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. *Id.* at 687. This requires showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* To establish prejudice, Hayes must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694.

**A.     Failure to Investigate Utility Records**

Hayes first contends that his trial counsel was ineffective for failing to investigate the utility records for his home and discover that the heat and electricity were operating throughout the charging period. Hayes contends that this evidence would have shown that the assaults did not happen or that, if they did, they occurred outside the charging period.

The Wisconsin Court of Appeals addressed this claim on the merits. The court first determined that, because Hayes never told trial counsel that the heat and electricity were never disconnected, counsel had no reason to conduct an independent

investigation of this issue. The court quoted *Strickland* for the proposition that "[c]ounsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." *Strickland*, 466 U.S. at 691. Based on this reasoning, the court of appeals found that Hayes had not demonstrated that counsel performed deficiently.

The court of appeals also determined that Hayes had failed to show prejudice. Here, the court emphasized that Hayes did not dispute that his utility service was disconnected during the month preceding the charging period. Indeed, Hayes testified at trial that his power was out on the first night Q.L.W. spent at his house. The court of appeals determined that, under state law, if Hayes had introduced the utility records at trial, the prosecution would have simply moved to amend the information to change the charging period to begin in March rather than April. *Hayes*, 2016 WL 7108388, at *4 (citing Wis. Stat. § 971.29). The court of appeals found that the trial court would have granted the motion to amend because Hayes could not have demonstrated prejudice. That was so, the court reasoned, because an amendment to the charging period would not have affected Hayes's trial strategy. Hayes never disputed that Q.L.W. spent at least a few nights at his house; he disputed only her allegation that she had a sexual relationship with him. Nothing about the timing of when Q.L.W. spent the night at Hayes's house was relevant to this defense.

In his habeas briefs, Hayes does not develop an argument showing that the court of appeals rendered a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law. Nor does he contend that the

court based its decision on an unreasonable determination of the facts. Moreover, my own review of the court's decision discloses no such deficiencies. The court of appeals properly applied *Strickland* and reasonably found that Hayes had not shown either deficient performance or prejudice. Accordingly, Hayes is not entitled to habeas relief on this claim.

**B.     Failure to Object to Amended Information**

Hayes next claims that his trial counsel should have objected when, six days before trial, the state filed an amended information that altered the charges from two counts of second-degree sexual assault to a single count of repeatedly sexually assaulting a child at least three times in a specified period. These crimes each carried the same maximum penalty: 40 years' imprisonment and a fine of $100,000. Thus, the amended information, which charged a single count of repeated sexual assault rather than two counts of second-degree sexual assault, cut Hayes's total exposure in half. Hayes's trial counsel stated on the record at the time of the amendment that, in light of the reduced exposure, Hayes would not object to the amendment. The trial court also found that Hayes had notice of the nature and cause of the accusations against him and that therefore, under state law, the amendment would have been allowed even if trial counsel had objected.

The Wisconsin Court of Appeals determined that Hayes had not shown that counsel performed deficiently by failing to object and that, in any event, Hayes suffered no prejudice. The court first noted that counsel's strategic decision to agree to an amendment that reduced Hayes's total exposure by half was rational and therefore not deficient performance. The court then found that, because the trial court independently

determined that Hayes had notice of the nature and cause of the accusations against him, the trial court would have allowed the amendment even over trial counsel's objection. Thus, the court found, Hayes could not have suffered prejudice from trial counsel's alleged deficient performance.

In his habeas briefs, Hayes does not develop an argument showing that the court of appeals rendered a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law. Nor does he contend that the court based its decision on an unreasonable determination of the facts. Moreover, my own review of the court's decision discloses no such deficiencies. The court of appeals properly applied *Strickland* and reasonably found that Hayes had not shown either deficient performance or prejudice. Accordingly, Hayes is not entitled to habeas relief on this claim.

**C.     Failure to Object to Detective Tramel-McClain's testimony**

Hayes next claims that his trial counsel was ineffective for not objecting to the following testimony by Detective Tramel-McClain:

> Q: In your experience as an investigator having interviewed I think you said about a hundred adolescent or teen sexual assault victims in that 11 to 16 age range that we discussed a few minutes ago, based on that experience and perhaps drawing on your training, have you found that it's rare or common or just varies as to whether a teen-age child would be forthcoming about all the information involved in a sexual assault on the initial interview?
>
> [Tramel-McClain]: Most teen-agers are not forthcoming. If they were the same willing participants in the incidents, they aren't necessarily forthcoming. If it's something that's forced, then most of the [sic] them are forthcoming with the information.

*Hayes*, 2016 WL 7108388, at *6.

Hayes contends that his trial counsel should have objected to this testimony on several grounds. First, he contends that counsel should have objected because Tramel-McClain was offering an expert opinion that did not meet the state's gateway standard for admissibility of expert testimony. However, in its decision on the post-conviction motion, the trial court found that, had counsel objected, the court would have overruled the objection because the opinion was admissible under state law. *Id.* On appeal, the court of appeals stated that, had the trial court admitted the testimony over trial counsel's objection, the court of appeals would have upheld the evidentiary ruling. Thus, the court of appeals determined that Hayes suffered no prejudice when his trial counsel failed to object on this ground. As the court's adjudication was not contrary to, and did not involve an unreasonable application of, Supreme Court law, Hayes is not entitled to habeas relief on this issue.

Second, Hayes contends that his trial counsel should have objected to Tramel-McClain's testimony on the ground that the state did not provide pretrial notice of its intent to offer her as an expert witness at trial. The Wisconsin Court of Appeals rejected this argument because Hayes raised it for the first time on appeal. As this was a rejection based on a state procedural rule, Hayes has procedurally defaulted this aspect of his claim. *See Johnson v. Foster*, 786 F.3d 501, 504 (7th Cir. 2015) ("petitioner's failure to comply with the state court system's procedural rules" results in procedural default). Moreover, in his federal briefs, Hayes does not develop this argument. Therefore, even if Hayes did not default the argument in state court, he has forfeited his right to raise it in federal court. *See Mathis v. New York Life Ins. Co.*, 133 F.3d 546, 548

(7th Cir. 1998) (even pro se litigants must present a legal argument and some supporting authority).

Third, Hayes contends that trial counsel should have objected to Tramel-McClain's testimony because it amounted to improper vouching for Q.L.W.'s credibility. The court of appeals rejected this argument because Tramel-McClain did not opine that Q.L.W. was telling the truth; instead, she testified that, in general, teen sexual-assault victims are not forthcoming when they are initially interviewed by police. The court of appeals found that, because this testimony did not amount to vouching, trial counsel was not deficient in failing to object on this ground. The court thus resolved this issue on the merits, and Hayes has not shown that the court's adjudication was contrary to, or involved an unreasonable application of, Supreme Court law.

Accordingly, Hayes is not entitled to habeas relief on his third claim of ineffective assistance of trial counsel.

**D. Failure to Object to Rebuttal Testimony**

Hayes next contends that his trial counsel rendered ineffective assistance when he failed to object to the state's calling Sienko as a rebuttal witness. In state court, Hayes argued that, because the state intended to call Sienko as part of its case-in-chief but failed to do so, Sienko was not a proper rebuttal witness. The Wisconsin Court of Appeals rejected this claim on a state procedural ground, namely, because Hayes had failed to cite any authority in support of his argument. *Hayes*, 2016 WL 7108388, at *7. Thus, Hayes has procedurally defaulted this claim. *See Johnson*, 786 F.3d at 504.

Alternatively, the Wisconsin Court of Appeals also rejected the claim on the merits. Here, the court found that, under state law, Sienko was a proper rebuttal witness

11

because her testimony "squarely rebutted Hayes's claim [during his testimony] that he never had any sexual contact with Q.L.W." by testifying that she witnessed Hayes and Q.L.W. engaged in oral sex. *Id.* The court noted that the trial court, in its decision on Hayes's postconviction motion, determined that if trial counsel had objected to Sienko's testimony as improper rebuttal, the court would have overruled the objection. The court of appeals thus found that trial counsel could not have performed deficiently by failing to object on this ground. Because this adjudication of the merits of Hayes's claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law, Hayes would not be entitled to relief on this claim even if federal review was not foreclosed by his procedural default.

E.      **Failure to Investigate Q.L.W.'s Lies**

Hayes's fifth and final claim of ineffective assistance is his allegation that his trial counsel failed to fully investigate "numerous lies" that Q.L.W. had told. *Hayes*, 2016 WL 7108388, at *8. The Wisconsin Court of Appeals rejected this claim on the merits. It first noted that the only "lie" Hayes identified in state court was a statement by Q.L.W. to police in which she told the police that a third person "had a tattoo of Hayes's name on her buttocks and was the mother of his child." *Id.* The court determined that his trial counsel could not have performed deficiently with respect to this alleged lie for three reasons: (1) Hayes pointed to no evidence indicating that Q.L.W.'s statement was false, (2) Hayes did not allege that he told his trial counsel that he believed the statement was false, and (3) in any event, Wisconsin's rules of evidence would have prohibited trial counsel from introducing extrinsic evidence showing that Q.L.W. had lied to police about a collateral matter.

Hayes has not shown that the Wisconsin Court of Appeals rendered a decision on this issue that was contrary to, or involved an unreasonable application of, clearly established federal law. Nor has he shown that the decision was based on an unreasonable determination of the facts. Accordingly, Hayes is not entitled to relief on his final ineffective-assistance claim.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Hayes's petition for a writ of habeas corpus is **DENIED**. The Clerk of Court shall enter final judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, I find that the petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 28th day of March, 2022.

s/Lynn Adelman
LYNN ADELMAN
District Judge